Jay **WEBB; Judy Webb; Roy Webb; Mickey Webb, Appellants,**

v.

R. **ROWLAND & CO., INC., Douglas C. Gast, Randall Moore, William Brandt, Paul L. Matecki, Appellees.**

Nos. 85–1966, 85–2158.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1986.

Decided Sept. 12, 1986.

**804**

Kenton E. Knickmeyer, St. Louis, Mo., for appellants.

Thomas C. Walsh, Kevin F. O'Malley, Gary S. Godwin, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for appellees.

Before LAY, Chief Judge, ROSENN [*] and BRIGHT, Senior Circuit Judges.

LAY, Chief Judge.

Jay Webb and Judy Webb, husband and wife, and Roy Webb and Mickey Webb, husband and wife, allege that the brokerage firm, R. Rowland & Co., and four of its employees, Douglas Gast, Paul L. Matecki, William Brandt, and Randall Moore, in their handling of the Webbs' accounts, were guilty of breach of contract, fraud, negligence, breach of fiduciary duty, and violations of the Securities Exchange Act and the Racketeer Influenced and Corrupt Organizations Act.

Following the commencement of this action, Rowland, Gast, and Matecki moved to compel arbitration of the claims asserted against them pursuant to the terms of the Customer's Agreements signed by each of the Webbs. The district court [1] granted the motion, but only as to the claims arising under state law. The court further ordered that the proceedings regarding the federal claims be stayed pending completion of arbitration. 613 F.Supp. 1123. The Webbs appeal from that order.

After a dispute arose over balances in their accounts, the Webbs filed suit against Rowland, Moore, Brandt, Gast, and Matecki, essentially alleging that although the Webbs had given the defendants instructions that any investments made were to be conservative ones, the defendants nevertheless made high-risk investments for the sole purpose of advancing their own interests. Furthermore, the Webbs contend that these investments were poor ones, causing the Webbs to lose money. Before filing their answers, Rowland, Gast, and

---

[*] The HONORABLE MAX ROSENN, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

1. The Honorable Roy W. Harper, United States District Court for the Eastern District of Missouri, presiding.

Matecki moved the district court to compel arbitration according to the terms of the Customer's Agreement signed by each of the Webbs. Paragraph Fourteen of the agreement provides:

> Any controversy between you and the undersigned or any of your officers, directors, agents or employees arising out of or relating to this agreement or the performance or breach thereof shall be settled by arbitration, in accordance with the rules then obtaining of either the American Arbitration Association or of any exchange, association or board of trade of which you may be a member, as the undersigned may elect; provided, however, that this agreement to arbitrate shall not be binding on the parties to this Agreement as to any controversy arising under the federal securities laws. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

The Webbs, however, argued that the agreement itself expressly stipulated that all provisions of the contract, including the section on arbitration, were to be governed by state law[2] and asserted two separate grounds for a ruling that the arbitration agreement was unenforceable. They first argued that this was an adhesion contract which is unenforceable by statute. *See* Mo.Ann.Stat. § 435.350 (Vernon Supp. 1986). They also argued that the arbitration clause does not comply with Mo.Ann. Stat. § 435.460 (Vernon Supp.1986) which requires that arbitration clauses be introduced by a notice, in ten point capital letters, that the contract contains a binding arbitration clause.

The district court rejected the Webbs' arguments and held that the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982), requires that the Webbs' state law claims be submitted to arbitration. The court also ordered that further proceedings on all federal claims be stayed pending the outcome of the arbitration. The Webbs appeal, alleging that the arbitration clause in the Customer's Agreement is invalid and that the district court erred in ordering a stay of proceedings on the claims not subject to arbitration since the arbitration will have no effect on the outcome of those claims.

**Jurisdiction**

Cases involving the denial or grant of a stay pending arbitration, such as in this instance, generally fall within the purview of the so-called *Enelow-Ettelson* rule.[3] That rule states that when a party attempts to interpose an equitable defense to a legal cause of action, the ruling on that defense is appealable as a grant or denial of an injunction under 28 U.S.C. § 1292(a)(1) (1982), but the same is not true for an equitable defense asserted in a traditional equity proceeding. *See Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 732 F.2d 444, 445 (5th Cir.1984); *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1462 (9th Cir.1983); 9 J. Moore, B. Ward & J. Lucas, Moore's Feder-

---

**2.** Paragraph Fifteen of the Customer's Agreement provides:

> This agreement and its enforcement shall be governed by the laws of the State of Missouri and its provisions shall be continuous; shall cover individually and collectively all accounts which the undersigned may open or reopen with you, and shall inure to the benefit of your present organization and the Clearing Broker designated by you, and any successor organizations, irrespective of any change or changes at any time in the personnel there-

of, for any cause whatsoever, and of the assigns of your present organization, the Clearing Broker, or any successor organizations and shall be binding upon the undersigned, and the estate, executors, administrators and assigns of the undersigned.

**3.** *See Enelow v. New York Life Insurance Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935) and *Ettelson v. Metropolitan Life Insurance Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942).

al Practice ¶ 110.20[3] (2d ed. 1985). While the rule may seem clear on its face, it is difficult to apply in practice and has been consistently criticized by nearly every court and commentator who has discussed it. *See, e.g., Matterhorn, Inc. v. NCR Corp.,* 763 F.2d 866, 871 (7th Cir.1985); *Mar-Len of Louisiana,* 732 F.2d at 445 n. 1; *Hussain v. Bache & Co.,* 562 F.2d 1287, 1289 & nn. 1, 2 & 3 (D.C.Cir.1977); *Danford v. Schwabacher,* 488 F.2d 454, 455, 457 (9th Cir.1973); J. Moore, *supra,* at 245; C. Wright, The Law of Federal Courts § 102, at 710–11 (4th ed. 1983). Rather than take sides on the jurisdictional issue, for purposes of this appeal, we will assume that the case is properly before us since a review of the merits reveals no error at the district court level.

### Arbitration Agreement

The Webbs argue that the arbitration provision in the Customer's Agreements they each signed is unenforceable. The thrust of their position is that since paragraph 15 of the agreement states "[t]his agreement and its enforcement shall be governed by the laws of the State of Missouri," Missouri law controls the enforcement of the arbitration provision. The Webbs then look to two provisions of the Uniform Arbitration Act, Mo.Ann.Stat. §§ 435.350–.470 (Vernon Supp.1986), to support their contention that the arbitration provision is unenforceable. First, Mo. Ann.Stat. § 435.350 provides, in part, "a provision in a written contract, except contracts of insurance and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." The Webbs argue that the Customer's Agreement, a preprinted form contract, is a contract of adhesion since there was no negotiation of any terms between the parties. The arbitration clause, therefore, falls outside the purview of section 435.350 and is unenforceable. Second, the

Webbs contend that Mo.Ann.Stat. § 435.-460 requires all arbitration provisions to be accompanied by a notice, in ten point capital letters, that the contract contains a binding arbitration provision. The Customer's Agreement contained no such notice and is thus, it is argued, unenforceable.

We reject these arguments. Before the enactment of the Federal Arbitration Act, many states adhered to the rule that agreements to arbitrate were revocable at will any time before issuance of an award. *See Johnson Controls, Inc. v. City of Cedar Rapids, Iowa,* 713 F.2d 370, 376 (8th Cir. 1983); *Collins Radio Co. v. Ex-Cell-O Corp.,* 467 F.2d 995, 997–98 (8th Cir.1972). In 1947, Congress passed the Arbitration Act which provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1982). There are only two limitations on the enforceability of an arbitration provision covered by the Act: (1) it must be part of a written maritime contract or a contract "evidencing a transaction involving commerce"; and (2) it may be revoked only upon "grounds as exist at law or in equity for the revocation of any contract." *Southland Corp. v. Keating,* 465 U.S. 1, 10–11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984) (quoting 9 U.S.C. § 2); *Guinness-Harp Corp. v. Jos. Schlitz Brewing Co.,* 613 F.2d 468, 472 (2d Cir.1980). It is clear, contrary to the Webbs' assertions, that federal law preempts state law with respect to the intepretation and construction of arbitration agreements falling within the scope of these requirements.[4] *E.g., Moses H.*

---

**4.** The Third Circuit has provided a hypothetical which is on all fours with the present case. It     reads:

*Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 705 (1983); *Johnson Controls,* 713 F.2d at 373; *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). This rule applies with equal force in both federal and state actions, *Southland,* 465 U.S. at 14–15, 104 S.Ct. at 860–61; *Collins Radio,* 467 F.2d at 999; *see also Bunge Corp. v. Perryville Feed & Produce, Inc.*, 685 S.W.2d 837, 839 (Mo.1985) (Missouri Supreme Court refused to apply Mo.Ann.Stat. § 435.460 to interstate contracts), and is based on the liberal federal policy favoring arbitration in contracts governed by the Arbitration Act, *Moses H. Cone Memorial Hospital,* 460 U.S. at 24, 103 S.Ct. at 941.

■ The Customer's Agreements at issue in this case are unquestionably contracts "evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2. The Federal Arbitration Act specifies that " 'commerce' * * * means commerce among the several States." 9 U.S.C. § 1 (1982). Clearly, a contract created for the ·purpose of trading securities interstate falls within this definition. *See Coenen,* 453 F.2d at 1211. Since there is no evidence to support a revocation of the Customer's Agreements in this case, the requirements set forth in *Southland* have been met. Therefore, we reject the Webbs' arguments that the choice of law provision in the Customer's Agreements mandates that the arbitration clause be construed according to Missouri law.

We note in passing that the Customer's Agreements are not invalid as contracts of adhesion. The use of a standard form contract between two parties of admittedly

unequal bargaining power does not invalidate an otherwise valid contractual provision. To be invalid, the provision at issue must be unconscionable. We have previously observed in a similar context: "There is certainly nothing inherently unfair about the arbitration clauses, and they are therefore valid and ·enforceable." *Surman v. Merrill Lynch, Pierce, Fenner & Smith,* 733 F.2d 59, 61 n. 2 (8th Cir.1984) (involving three separate arbitration clauses in three separate standarized contracts, all of which are substantially similar to the arbitration provision at issue in this case).

**Stay of Proceedings**

The Webbs also argue that the district court erred in staying the proceedings on the remaining federal claims pending the outcome of the arbitration proceedings on the state law claims. In its memorandum and order, the district court stated that "the interests of the parties and judicial efficiency would best be served by staying plaintiffs' federal-law claims against defendants pending resolution of the state-law claims." The Webbs argue that this statement is purely conclusory, and the failure of the court to articulate reasons underlying its exercise of discretion requires that the stay be vacated.

■ Section 3 of the Federal Arbitration Act provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of

For example, consider the case where a contract containing an arbitration clause provides that the law of state X shall govern the agreement. Assume that the law of state X will not enforce, or gives very limited effect to arbitration clauses, such that under X law the dispute would not be submitted to arbitration. If one party sues on the contract in federal court, and the contract involves "commerce",

the federal district court, in deciding a motion to stay the proceedings and compel arbitration under 9 U.S.C. § 3, would look to federal law in determining the scope of the arbitration clause.
*Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH,* 585 F.2d 39, 43 n. 8 (3rd Cir. 1978).

the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (1982). The Seventh Circuit has held that the mandatory language of section 3 requires a court to grant a request for a stay of proceedings pending arbitration when two conditions are met: "(1) the issue is one which is referable to arbitration under an agreement in writing for such arbitration, and (2) the party applying for the stay is not in default in proceeding with such arbitration." *C. Itoh & Co. v. Jordan International Co.,* 552 F.2d 1228, 1231 (7th Cir.1977). The district court also has the inherent power to grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it. *Contracting Northwest, Inc. v. City of Fredericksburg,* 713 F.2d 382, 387 (8th Cir.1983); *see also Mediterranean Enterprises,* 708 F.2d at 1465. In any event, the decision whether to grant or deny a request for a stay is a matter lying within the sound discretion of the district court which will be overturned only upon a clear showing of an abuse of that discretion. *ATSA of California, Inc. v. Continental Insurance Co.,* 702 F.2d 172, 176 (9th Cir. 1983); *Collins,* 467 F.2d at 1000.

We find no abuse of discretion here. The district court reasoned that a stay of all proceedings pending arbitration was warranted in this case in the interests of the parties and judicial efficiency. The court was merely exercising its inherent judicial power to control the case before it and prevent unnecessary litigation.

The judgment of the district court is affirmed.