Helen K. HALL and Mary Jeanne
Hall, Plaintiffs,

v.

PRUDENTIAL–BACHE SECURITIES,
INC., Scott Miller, and Peter
Martinez, Defendants.

No. CV 86–5520–ER(Kx).

United States District Court,
C.D. California.

April 30, 1987.

---

Fred Rucker, Rucker & Clarkson, Los Angeles, Cal., for plaintiffs.

John A. Blue, Adams, Duque & Hazeltine, Los Angeles, Cal., for defendants.

## ·ORDER COMPELLING ARBITRATION

RAFEEDIE, District Judge.

Plaintiffs commenced this action against Prudential-Bache Securities ("Pru-Bache"), Scott Miller and Peter Martinez, employees of Pru-Bache allegedly responsible for the handling of plaintiffs' accounts, alleging that defendants violated sections 10(b), 12(a), and 15(c) of the Securities Exchange Act of 1934 ("1934 Act"), sections 12(2) and 20 of the Securities Act of 1933 ("1933 Act"), the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961 *et seq.*, and also alleging state law claims for fraud, misrepresentation, emotional distress, breach of fiduciary duty, negligence, violation of state securities law, and breach of contract. The heart of plaintiffs' action arises from the alleged "manifest and outrageous 'churning' of securities accounts maintained by Plaintiffs" at Pru-Bache. (Plaintiffs' Opposition to Motion to Compel, p. 2)

On September 6, 1980, plaintiff Mary Jeanne Hall entered into a Customer Agreement ("Agreement") with Pru-Bache. (Exhibit B to Complaint). On October 12, 1981, plaintiff Helen Hall entered into an identical agreement with Pru-Bache. (Exhibit A to Complaint). Both agreements were one page documents containing 15 paragraphs of small, but equally sized print.

Paragraph 14 of each agreement provided, in part:

Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof ... shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Ex-

change as I may elect. If I do not make such an election by registered mail addressed to you at your main office within five (5) days after demand by you that I make such an election, then you may make such election.

Relying upon this clause Pru-Bache has moved this Court to compel arbitration of plaintiffs' state and RICO claims pursuant to section four of the Federal Arbitration Act, 9 U.S.C. § 4. Pru-Bache has not moved this Court to compel arbitration of claims under the 1933 and 1934 Acts in light of *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) and *Conover v. Dean Witter Reynolds Inc.*, 794 F.2d 520 (9th Cir.1986), although Pru-Bache states that it may later seek to compel arbitration of the 1934 claims if the Supreme Court rules that such claims are arbitrable in *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir. 1986) *cert. granted* —— U.S. ——, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986).

In considering whether to grant a motion to compel, this Court must determine (i) whether there is a valid agreement to arbitrate between plaintiffs and Pru-Bache, and (ii) whether the state and RICO claims are arbitrable.

## THE AGREEMENT TO ARBITRATE

■ The issue of whether an agreement to arbitrate is valid is determined by federal law. Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2 (1982) ("Act") provides, in part:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Federal law clearly preempts state law on issues of arbitrability. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–5, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Bayma v. Smith Barney, Harris, Upham and Co., Inc.*, 784 F.2d 1023, 1025 (9th Cir.1986); *Webb v. R. Rowland & Co., Inc.*, 800 F.2d 803 (8th Cir.1986); *Tonetti v. Shirley*, 173 Cal.App.3d 1144, 1148–50, 219 Cal.Rptr. 616, 618–20 (1985).

Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act ... The Arbitration Act establishes that, as a matter of federal law, *any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration*, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone*, 460 U.S. at 24–5, 103 S.Ct. at 941 (emphasis added, footnote omitted).

Plaintiffs' claim that the arbitration clause is invalid is based upon their argument that paragraph 14 of the Agreement is a mandatory provision in a 15 paragraph standard form and that the parties have unequal bargaining power, therefore making the arbitration clause an unenforceable contract of adhesion.[1]

---

**1.** It is worth noting that the plaintiffs' papers do not specifically delineate the theory upon which they sought to invalidate the Agreement— whether they claim that the Agreement is invalid or that just the arbitration clause should be invalidated. At the hearing on the motion to compel arbitration, plaintiffs' counsel informed the Court that they challenged only the arbitration clause as adhesive and not the entire agreement. The import of this distinction was explained in *Brener v. Becker Paribas, Inc.*, 628 F.Supp. 442, 446 (S.D.N.Y.1985):

The law in this area was clearly established by *Prima Paint Corp. v. Flood and Corklin Mfg. Co.*, 388 U.S. 395, 402–04, 87 S.Ct. 1801, 1805– 06, 18 L.Ed.2d 1270 (1967). In that case, the Supreme Court held that when a contract contains an arbitration clause, a claim of fraudulent inducement concerning the contract as a whole should be decided by an arbitrator. The court will become involved only if there is a specific allegation that the arbitration clause itself, standing apart from the overall agreement, was induced by fraud.

Although plaintiffs acknowledge that federal law governs the determination of the validity of the arbitration clause in question, they cite a decision based on California law as the primary support for the position that the agreement was an invalid adhesive contract. *Hope v. Superior Court,* 122 Cal.App.3d 147, 175 Cal.Rptr. 851 (1981). That *Hope,* a decision based on state law, is not applicable to the question at hand was made clear by the Ninth Circuit in *Bayma,* 784 F.2d at 1025. In fact, none of the cases cited by plaintiffs are very helpful in determining federal law on this issue. A number of federal courts have discussed the issue of whether arbitration clauses in customer agreements were invalid as adhesive contracts, but neither party has cited those cases.

In *Webb v. R. Rowland & Co., Inc.,* 800 F.2d 803 (8th Cir.1986), customers brought claims against their brokerage house and some of its employees. The district court ordered the state claims to be arbitrated pursuant to an arbitration clause in the Customer Agreement that was substantially the same as the arbitration clause involved in this case. On appeal, plaintiffs contended that the arbitration clause was adhesive for the same reasons tendered here. The Eighth Circuit held that the Agreement was not an invalid contract of adhesion:

> "The use of a standard form contract between two parties of admittedly unequal bargaining power does not invalidate an otherwise valid contractual provision. To be invalid, the provision at issue must be unconscionable. We have previously observed in a similar context: 'There is certainly nothing inherently unfair about the arbitration clauses, and they are therefore valid and enforceable.' *Surman v. Merrill Lynch, Pierce Fenner & Smith,* 733 F.2d 59, 61, n. 2 [8th Cir. 1984]." (*Surman* involved arbitra-

tion clauses substantially similar to those involved in this case.)

*Webb,* 800 F.2d at 807.

Similar results have been reached by numerous federal courts facing the same issue and involving substantially similar Agreements and arbitration clauses. *Coleman v. Prudential Bache Securities, Inc.,* 802 F.2d 1350 (11th Cir.1986); *Blatt v. Shearson Lehman/American Express,* No. 84 Civ. 7715–CSH (slip opinion) (S.D. N.Y. Oct. 31, 1986) [Available on WEST-LAW, DCT database]; *Brener v. Becker Paribas Inc.,* 628 F.Supp. 442, 446 n. 3 (S.D.N.Y.1985); *Yee v. Merrill Lynch, Pierce, Fenner & Smith,* No. 84–4017 (slip opinion) (D.Mich. March 31, 1986) [Available on WESTLAW, DCT database] (and cases cited therein); *Shotto v. Laub,* 632 F.Supp. 516, 522 (D.Md.1986); *but see Woodyard v. Merrill Lynch, Pierce, Fenner & Smith,* 640 F.Supp. 760 (S.D.Tex. 1986).

■ This Court agrees with the conclusion of other federal courts that there is nothing inherently unfair about arbitration clauses or standard form agreements. There is no evidence that the Agreements were contracts of adhesion and there is no evidence of any unfairness in this case. The agreement is a short one-page document. All of the clauses are printed in the same size print. Plaintiffs apparently opened their accounts with Pru-Bache upon the advice of a relative who also had a Pru-Bache account and who was a lawyer. There is no evidence of fraud or misrepresentation related to the signing of the Agreements in this case and the Court finds that the arbitration clauses are valid.

Having determined that the arbitration clauses in the Agreement are valid, it follows quite clearly that plaintiffs' state law claims should be severed and arbitration of the claims should be compelled. *Dean Wit-*

---

(Citations omitted). Claims concerning duress, unconscionability, coercion, or confusion in signing should be determined by an arbitrator because those issues go to the formation of the contract. *See Merrill Lynch, Pierce, Fenner & Smith v. Haydu,* 637 F.2d 391, 398 (5th Cir.1981).

Plaintiffs are arguing the latter and there is no evidence or reasoning which warrants a finding that the arbitration clause in paragraph 14 is adhesive in light of the record before the Court.

*ter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

## ARBITRABILITY OF RICO CLAIMS

■ The Ninth Circuit has not decided the issue of whether RICO claims are arbitrable. *See Felkner v. Dean Witter Reynolds, Inc.,* 800 F.2d 1466, 1470 n. 5 (1986) (court decided there was not a valid arbitration agreement, therefore did not reach the question of whether RICO claims were arbitrable).

The arbitrability of RICO claims has been the subject of extensive and conflicting interpretation. *See Jacobson v. Merrill Lynch, Pierce, Fenner & Smith,* 797 F.2d 1197, 1199 n. 2 (3d Cir.1986) (and cases cited therein). Recent developments in the law, particularly the spate of new Supreme Court decisions on arbitration, have "outdated" many of the reported decisions in the field, and almost all of the cases cited by the parties appear somewhat anachronistic. *Compare Sacks v. Dean Witter,* 627 F.Supp. 377 (C.D.Cal.1985) (RICO claims are arbitrable) *and West v. Drexel Burnham Lambert, Inc.,* 623 F.Supp. 26 (W.D. Wash.) (same) *with Wilcox v. Ho-Wing Sit,* 586 F.Supp. 561 (N.D.Cal.1984) (RICO claims not arbitrable). All of these decisions were based to an extent on interpretations of the law that are no longer valid in light of recent Supreme Court cases.

Perhaps nowhere has the flux in the law been more greatly revealed than in the Fifth Circuit. Plaintiff cites *Smoky Greenhaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 785 F.2d 1274, 1281 (1986) for the proposition that RICO claims are nonarbitrable. While the Fifth Circuit initially reached this result, it amended its opinion on petition for rehearing and suggestion for rehearing en banc "to refuse to decide the arbitrability *vel non* of the plaintiff's RICO claim" in light of the Supreme Court's decision in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). *Smoky*

*Greenhaw,* 785 F.2d at 1282. As discussed below, the Fifth Circuit has now decided that RICO claims are arbitrable. *Mayaja, Inc. v. Bodkin,* 803 F.2d 157 (5th Cir.1986).

Remarkably the parties have failed to cite all but one of the four recent circuit court cases addressing the issue of the arbitrability of RICO claims.[2] Instead they have relied upon outdated opinions from various district courts.

The Second Circuit was the first circuit court to reach this issue in *McMahon v. Shearson Lehman/American Express, Inc.,* 788 F.2d 94, *cert. granted* — U.S. ——, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986). *McMahon* holds that no private RICO claims may be arbitrated in light of "strong policy concerns, the need for development of the record, and judicial clarification and resulting consistency in resolving disputes under this relatively new statute." 788 F.2d at 99. *McMahon* is also one of the major circuit court cases holding that claims under the 1934 Act are not arbitrable. *See also Conover,* 794 F.2d at 522; *Mayaja,* 803 F.2d at 162. It is not clear whether the Supreme Court, in granting certiorari, will review the Second Circuit's holding concerning the nonarbitrability of claims under the 1934 Act, RICO, or both.

The Third Circuit criticized the rationale used in *McMahon* stating "that *McMahon* paid too little deference to the Supreme Court's decision in *Mitsubishi* [which] teaches that exceptions to the general enforceability of arbitration agreements pursuant to the Federal Arbitration Act must be found, if at all, in regulatory statutes.... [Thus] determining statutory claims to be nonarbitrable on the basis of some judicially recognized public policy rather than as a matter of statutory interpretation is no longer permissible." *Jacobson,* 797 F.2d at 1202. Thus, the Third Circuit found that *McMahon's* reliance on policy considerations to hold RICO claims nonarbitrable ran contrary to *Mitsubishi.*

*Jacobson* found that there was no statutory interpretation of RICO itself which

---

**2.** A Fifth Circuit case dealing with this issue was not decided until after the hearing on this motion to compel. See *Page v. Moseley, Hallgarten,*

*Estabrook & Weeden,* 806 F.2d 291 (1st Cir.1986) discussed *infra.*

would warrant barring the arbitration of RICO claims, but instead looked to statutory interpretation of the underlying predicate acts supporting the RICO claim to determine the arbitration question. Thus, *Jacobson* holds that RICO claims based upon predicate acts under the 1934 Act were not arbitrable in light of its holding that 1934 Act claims were not arbitrable. *Jacobson* also holds, however, that RICO claims based on federal mail and wire fraud violations were arbitrable to the extent based upon these predicate acts, but were not arbitrable to the extent based on alleged 1934 Act violations. *Jacobson* justified this distinction, and its bifurcated rule for RICO claims, by finding that the legislative history underlying the 1934 Act precluded arbitration of claims arising under the 1934 Act; whereas there was no such anti-waiver provisions in the federal mail and wire fraud statutes. 18 U.S.C. §§ 1341, 1342.

While this court agrees with *Jacobson's* criticism of *McMahon*, it has serious doubts about the appropriateness and correctness of the result reached by *Jacobson.* Initially, the Court notes that the federal mail and wire fraud statutes do not contain anti-waiver provisions because they are criminal felony statutes: "arbitration of a felony charge simply does not occur in our legal system." *Mayaja,* 803 F.2d at 163–64 n. 6. Judge Adams' partial dissenting opinion in *Jacobson* appears to represent the sounder view of the question of whether RICO claims should be subject to arbitration.

Judge Adams agreed with the majority that there was "no indication that Congress intended to exempt RICO actions from the [Arbitration Act]," but argued that the majority's contention that "the arbitrability of RICO actions turns on the nature of the predicate offenses underlying such actions" was ill-founded and "misconceives the appropriate inquiry." 797 F.2d at 1207–09. Although Adams did not so argue, the fact that there could be no legislative history showing congressional intent to arbitrate mail and wire fraud claims reveals the flawed approach of the majority in *Jacobson.*

As Adams wrote, "A private right of action under RICO is a unique and separate claim to which the Arbitration Act logically applies.... Given the clear distinction between the nature of a RICO violation and any particular predicate offense, the congressional intent in passing the Securities Exchange Act would not appear to be relevant in an inquiry into the legislative purpose animating RICO." 797 F.2d at 1209.

In itself, Judge Adams' opinion appears to be a sounder opinion than the majority in *Jacobson.* It is worth noting the anomalous result of the majority's opinion—the plaintiff's RICO claim, to the extent based on mail and wire fraud was to be arbitrated, whereas its RICO claim, to the extent based on 1934 Act violations, was not arbitrable. Thus a single RICO claim was split between two forums.

But Judge Adams' opinion is not the most recent word on this issue. The Eleventh Circuit has subsequently held RICO claims based on 1933 and 1934 Act violations are nonarbitrable in an opinion which follows both *McMahon* and *Jacobson* without much analysis. *Tashea v. Bache, Halsey, Stuart, Shields, Inc.,* 802 F.2d 1337 (1986).

In a much more analytical and thoughtful opinion, the Fifth Circuit has come full circle from its repudiated statement in *Smoky Greenhaw,* and squarely holds that RICO claims are arbitrable regardless of the arbitrability or nonarbitrability of the underlying predicate acts, thus rejecting the approach of *McMahon* and *Jacobson. Mayaja,* 803 F.2d at 166.

Much of *Mayaja* tracks the dissent of Judge Adams from *Jacobson.* The Fifth Circuit also undertakes an extensive analysis of the legislative history of RICO and writes that in so doing, "[o]ne notes that the most recurrent theme in the legislative history of the section is found in the repeated references to section 4 of the Clayton Act." Referencing the analysis of the legislative history of the Clayton Act undertaken by the United States Supreme Court in *Mitsubishi. Mayaja* holds that there is no congressional intent that RICO

claims were to be non-arbitrable, and therefore, especially in light of the very strong federal policy favoring arbitration, plaintiff's RICO claims should be submitted to arbitration under the Arbitration Act.

*Mayaja* was criticized in a case decided by the First Circuit which held RICO claims are not arbitrable, *Page v. Moseley, Hallgarten, Estabrook & Weeden,* 806 F.2d 291, 299 n. 13 (1st Cir.1986); however this Court believes that *Mayaja* represents the sounder view on this issue.

This Court has considered the recent case law and determines that RICO claims are arbitrable regardless of the arbitrability/nonarbitrability of the underlying predicate acts. Consequently, plaintiffs' RICO claim, as well as their state claims, must be submitted to arbitration pursuant to the Agreement and the Arbitration Act.

IT IS SO ORDERED.

The Court further orders the Clerk to serve copies of this Order on all parties by United States mail.