[656 NYS2d 620]

In the Matter of the Arbitration between McMAHAN &
COMPANY, Respondent-Appellant, and DUNN NEWFUND I,
LTD., et al., Appellants-Respondents, et al., Respondent.

First Department, April 24, 1997

### APPEARANCES OF COUNSEL

*Deborah E. Lans* of counsel, New York City *(Fred H. Perkins* and *Danielle C. Lesser* on the brief; *Morrison Cohen Singer & Weinstein, L. L. P.,* attorneys), for respondent-appellant.

*Gerald A. Novack* of counsel, New York City *(Jack G. Lerner* and *Marcy Kaplan* on the brief; *Kirkpatrick & Lockhart, L. L. P.,* attorneys), for appellants-respondents.

### OPINION OF THE COURT

WALLACH, J.

On this appeal, we are called upon to consider the proper scope of judicial review of a charge of fundamental unfairness in the conduct of a massive arbitration proceeding over a period of $4^{1}/_{2}$ years, with at least 24 hearing days.

A five-member arbitration panel, convened under the rules of the American Stock Exchange and concededly subject to the provisions of the Federal Arbitration Act, awarded the New-Fund respondents damages against petitioner in excess of $1.5 million on a claim that the latter had breached an oral agreement to provide financial liquidity to the NewFund respondents for their commodity trading operations. The IAS Court vacated this award on the ground that the proceeding was "fundamentally unfair," reasoning as follows: "The court finds it very disturbing that the Panel which ultimately issued the Award was composed of only two original panel members (Lazerus and Maina) and three substitute arbitrators (Koffler, Mechmann, and Ciccone), i.e., the majority of the arbitrators who made the Award were not panel members when the hearings began and therefore obviously did not hear a substantial part of the testimony. The Court is convinced that these substitutions, and the resulting delay and failure of all the arbitrators to hear live testimony compromised the ability of the arbitrators to properly assess the evidence of this case."

We disagree. These arbitration proceedings commenced in March 1989 before a panel of five members with securities expertise. This panel heard six witnesses on 11 hearing dates over eight months, including the direct and cross-examination of the principal officers (D. Bruce McMahan and William A. Dunn) of the contesting parties. After the first substitution in September 1990, the new panelist (Mechmann) read all the existing transcripts and joined the proceedings. Another 10 months, five hearing sessions and two witnesses followed. In December 1991, a similar substitution occurred, followed by seven witnesses. The last of the three substitutions took place in June 1993, after a challenge by petitioner had been validly overruled by the Exchange.* After the sessions resumed on August 3, 1993, the reconstituted panel heard the final eight days of testimony, followed by the parties' closing arguments. With the consent of both parties, the final session consisted of a recall of the two adversarial principals, who were subjected to direct inquiry by all the panel members, with minimal participation by respective counsel.

At the outset, we find that the substitution procedures were consistent with the provisions of the Federal Arbitration Act (9 USC § 5) and the applicable Exchange rules. Also, the broad

---

* The later substitute panelists (Koffler and Ciccone) also read the transcripts of all prior proceedings before taking the oath and joining the hearings.

arbitration clause, which was contained in the written subordinated loan agreements between the parties, established arbitral jurisdiction.

While it is true that Federal courts have expressly held that fundamental unfairness can constitute a ground for vacatur of an arbitration award independent of the four grounds explicitly set forth in section 10 of the statute (*Bowles Fin. Group v Stifel, Nicolaus & Co.*, 22 F3d 1010, 1012-1013), fundamental fairness is not to be equated with the full panoply of judicial procedural safeguards (*Yasuda Fire & Mar. Ins. Co. v Continental Cas. Co.*, 37 F3d 345, 353) and legal "niceties" of the courtroom (*Bell Aerospace Co. Div. of Textron v Local 516*, 500 F2d 921, 923). Due process in arbitration means satisfying "minimal requirements of fairness" (*Ficek v Southern Pac. Co.*, 338 F2d 655, 657, *cert denied* 380 US 988). That standard is met when the parties have had adequate notice and opportunity to be heard by unbiased decision makers (*Bowles Fin. Group v Stifel, Nicolaus & Co., supra*, 22 F3d, at 1013; *Totem Mar. Tug & Barge v North Am. Towing*, 607 F2d 649, 651; *cf.*, *Hall v Eastern Air Lines*, 511 F2d 663).

Fundamental unfairness often involves insufficient notice (*see, e.g., Carpenters 46 N. Cal. Counties Conference Bd. v Zcon Bldrs.*, 96 F3d 410, 414) or refusal to receive appropriate evidence (*cf., Matter of Grahams Serv. v Teamsters Local 975*, 700 F2d 420, 422). Here, petitioner had an opportunity to be heard and to present all of its evidence, and no issue of notice is raised. Contrary to petitioner's argument, the record shows that it acknowledged and waived the opportunity to present any additional evidence, and it preserved a posthearing objection only as to the panel substitutions.

At the core of the IAS Court's conclusion of "unfairness" is the circumstance that the three substituted panelists did not have the opportunity to perceive the demeanor of all the witnesses in assessing the credibility of their testimony. That circumstance did not, in our view, render the arbitration proceedings fatally flawed, for at least three reasons:

(i) Demeanor of a witness is of far greater import in judicial proceedings, where it provides the basis for appellate deference to a trial court's credibility findings, and limits the range and scope of appellate review (*Kincade v Kincade*, 178 AD2d 510, 511). Those considerations do not operate in a judicial review of arbitration, where the guiding principle of *all* judicial review, at whatever level, is that "[t]he court neither resolves the underlying factual controversy nor weighs the relative

merits of the parties' claims" (*International Assn. of Machinists & Aerospace Workers v Aloha Airlines*, 790 F2d 727, 731, *cert denied* 479 US 931). And since "the reviewing court may not re-weigh or re-examine the evidence" (*see, Todd Shipyards Corp. v Cunard Line*, 735 F Supp 1463, 1466, *affd* 943 F2d 1056), judicial review never enters the domain where credibility evaluation becomes a pertinent factor. Obviously, if a court cannot "weigh" the evidence, it cannot weigh credibility, which in the end is simply a component of that evidence.

(ii) The demeanor of witnesses may be of enormous importance to a lay jury (or a nisi prius Judge), where the trier of fact must decide which witnesses to believe, what portion of their testimony is to be accepted and what weight is to be ascribed thereto (PJI 1:7). While that function may also be appropriate for an arbitrator, there is no rule or principle that would foreclose reliance upon a transcript of prior testimony. By agreeing to arbitrate a controversy, the parties have chosen to rely upon a different standard for evaluating credibility— namely, the expertise of the arbitrators in the customs and trade practices of the particular business or industry involved. Here the arbitrators were all, in varying degrees, experts in the world of commodities trading, and that expertise provides the basis for the most minimal kind of judicial oversight.

(iii) Finally, the IAS Court overlooked the fact that the arbitration panel itself addressed the "demeanor" problem by recalling the critical major witness on each side of this controversy for a live replay of their testimony before the entire final panel on the last day of the hearings. It is not for a reviewing court to say that this procedure revealed an inadequate appreciation of the credibility issue and a procedural shortfall in confronting it.

We have considered petitioner's other contentions, including its public policy arguments, and find them to be without merit.

Accordingly, the order, Supreme Court, New York County (Herman Cahn, J.), entered January 26, 1996, which denied respondents' cross motion to confirm the underlying arbitration award and granted petitioner's motion to vacate the award, should be reversed, on the law, without costs, the motion denied and the cross motion to confirm the award granted.

SULLIVAN, J. P., RUBIN, TOM and ANDRIAS, JJ., concur.

Order, Supreme Court, New York Court, entered January 26, 1996, reversed, on the law, without costs, the motion to vacate the award denied, and the cross motion to confirm the award granted.