IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| CHRISTIE PARKER, as the personal representative of the ESTATE OF BEVERLY PARKER, on behalf of the Estate, | No. 87830-1-I |
| Respondent, | |
| v. | |
| AEGIS SENIOR COMMUNITIES LLC, dba AEGIS LIVING, a Washington limited liability company, | UNPUBLISHED OPINION |
| Appellant, | |
| HOME CARE COMPANY, LLC, a Washington limited liability company, | |
| Defendant. | |

BOWMAN, A.C.J. — Christie Parker, as personal representative of her mother Beverly Parker's estate, sued Aegis Living Mercer Island for negligence and violation of the abuse of vulnerable adults statute, RCW 74.34.200. Aegis Living moved to compel arbitration. The trial court denied the motion, finding the "Voluntary Agreement to Arbitrate Disputes" (Arbitration Agreement) unconscionable and unenforceable. Aegis Living appeals. Because the Arbitration Agreement's subject-matter exclusions, discovery limitations, and confidentiality provision are substantively unconscionable and pervade the

Arbitration Agreement, we affirm the trial court's order denying Aegis Living's motion to compel arbitration.

FACTS

In January 2020, 90-year-old Beverly[1] became a resident at the senior care facility Aegis Living. During the admissions process, Beverly's son, Robert Parker, executed several documents on behalf of Beverly as her medical power of attorney. Robert had little experience with contracts and was rarely responsible for executing documents about Beverly's care. Typically, his sister Christie signed any contracts related to their mother's care. But he signed the paperwork required for Beverly's residency at Aegis Living because her "needs had become urgent."

Five months later on June 11, 2020, Robert signed Aegis Living's Arbitration Agreement. Robert does not remember reviewing or signing the document. The Arbitration Agreement provided that any claims or disputes between Beverly and Aegis "arising from or related to the Residence and Care agreement entered into by the parties on January 14th, 2020" or to Beverly's residency, care, or services at Aegis, "including, without limitation claims and disputes regarding personal injury, neglect, statutory or regulatory violations, and wrongful death, shall be arbitrated." But it also excluded certain claims from arbitration, including unlawful detainer actions, actions for discharge or transfer from Aegis Living, claims for injunctive or equitable relief, actions for the

---

[1] We refer to members of the Parker family by their first names when necessary for clarity and mean no disrespect by doing so.

appointment of a guardian ad litem, or any claims that could be brought in small claims court "unless both parties agree to arbitrate such proceedings."

The Arbitration Agreement stated that the United States Arbitration Act (FAA), Title 9 U.S.C., controlled "with respect to interpretation or enforcement of this Agreement." And it included a confidentiality provision as to "all matters relating to arbitration," including "the existence and subject of the arbitration." It also had a costs provision, under which "[e]ach party shall bear its own costs and fees in connection with the arbitration, unless otherwise provided by law."

In January 2021, Beverly fell and hit her head. Within the next five months, Beverly fell two more times while in Aegis Living's care. She also sustained a "skin tear" on her elbow and a cut, swollen finger during this time. On July 8, 2021, Beverly fell again. As a result, she fractured her neck and was in the hospital for nine days. Aegis Living informed Beverly's children that she needed constant monitoring to ensure her safety and to prevent future falls. Robert and Christie hired Home Care Company (HCC) to monitor Beverly and establish a care plan. Aegis Living said that it would "manage HCC's oversight of Beverly."

On July 23, 2021, Beverly sustained another severe fall when the caregiver assigned to provide constant overnight monitoring left her unattended. The caregiver found Beverly on the floor and called for help. Both Aegis Living and the caregiver assessed Beverly and lifted her back into bed. They gave her Tylenol and ice for her hip but provided no further treatment.

Shortly after, Beverly complained of pain in her groin and hip area. Aegis Living diagnosed Beverly with a vaginal infection due to improper hygienic care. When Beverly worsened, Aegis Living told Christie that her mother appeared to be in significant pain and recommended that she contact Beverly's physician for additional pain medication, which Christie did. By July 30, 2021, Beverly had not improved, so Aegis Living ordered X-rays, which showed that Beverly had sustained a hip fracture from the most recent fall. As a result of Beverly's falls, she became permanently unable to walk and experienced increased cognitive decline. Beverly was later transferred to hospice care and died on January 3, 2023.

On May 10, 2024, Christie as the personal representative of Beverly's estate sued Aegis Senior Communities LLC d/b/a Aegis Living and HCC, asserting claims for negligence and a violation of the abuse of vulnerable adults statute.[2] On October 23, Aegis Living moved the trial court to compel arbitration under the Arbitration Agreement. Christie responded, arguing, among other things, the Arbitration Agreement is unenforceable because it is substantively and procedurally unconscionable.

On December 10, 2024, the trial court denied Aegis Living's motion to compel arbitration. The court concluded that the Arbitration Agreement is unenforceable because it is substantively and procedurally unconscionable. It determined that it was substantively unconscionable based on (1) the costs provision; (2) the confidentiality provision; (3) the subject-matter exclusions that

---

[2] HCC is not a party to this appeal.

4

leave the agreement, "in part, one-sided" by covering "all potential claims by Plaintiff but only some with notable exceptions by Defendant Aegis [Living]"; and (4) "the discovery limitations imposed by the FAA [that] also create one-sidedness" by limiting Christie's "ability to gather information related to the healthcare and treatment of Beverly." The court determined that the Arbitration Agreement was procedurally unconscionable because it provides "insufficient clarity as to the arbitration process." The court also concluded that the unconscionability "permeates the entire Agreement," so the provisions "cannot be severed."

On December 20, 2024, Aegis Living moved for reconsideration, arguing that the Arbitration Agreement is enforceable. The trial court reconsidered its ruling on the agreement's costs provision, determining that the provision is not substantively unconscionable, but otherwise denied the motion.

Aegis Living appeals.

ANALYSIS

Aegis Living argues the trial court erred by concluding that the Arbitration Agreement is unenforceable because it is not substantively or procedurally unconscionable.[3] And it asserts that even if certain provisions are

---

[3] Aegis Living also argues the "trial court failed to give proper weight to the overwhelming presumption in favor of arbitration where a valid agreement to arbitrate exists." First, it is unclear whether such a presumption still exists. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022) (While a court "must hold a party to its arbitration contract just as the court would to any other kind," it "may not devise novel rules to favor arbitration over litigation."). In any event, the presumption in favor of arbitration applies to the construction of contract language or defenses to a valid arbitration agreement. *See Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301, 103 P.3d 753 (2004). It does not apply when determining whether an agreement itself is valid. *See id.* at 301-02. So, the presumption does not apply here.

unconscionable, the court erred by not severing them. We address each argument in turn.

We review a trial court's order denying a motion to compel arbitration de novo. *Saili v. Parkland Auto Ctr., Inc.*, 181 Wn. App. 221, 224, 329 P.3d 915 (2014). The party opposing arbitration has the burden of showing that the agreement is not enforceable. *Adler v. Fred Line Manor*, 153 Wn.2d 331, 342, 103 P.3d 773 (2004). Generally, applicable contract defenses like unconscionability may invalidate arbitration agreements. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004). Washington recognizes two types of unconscionability that invalidate arbitration agreements—procedural and substantive. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 54, 470 P.3d 486 (2020). Either type is sufficient to void an agreement. *Id.*

1. Substantive Unconscionability

Aegis Living argues that the trial court erred by finding the Arbitration Agreement substantively unconscionable based on its subject-matter exclusions, discovery limitations, and confidentiality provision. We disagree.

An arbitration agreement may be substantively unconscionable when a term in the contract is "one-sided or overly harsh." *Burnett*, 196 Wn.2d at 54. To determine whether an agreement is substantively unconscionable, courts consider whether the provisions are shocking to the conscience, monstrously harsh, or exceedingly calloused. *Adler*, 153 Wn.2d at 344-45.

6

A. Subject-Matter Exclusions

Aegis Living argues the trial court erred by finding the Arbitration Agreement's subject-matter exclusions substantively unconscionable because they "mutually" apply to the parties. Christie contends the exclusions are unconscionable because they impose a "unilateral arbitration obligation" on residents to arbitrate their claims while permitting Aegis Living access to the courts. We agree with Christie.

A subject-matter exclusion in an arbitration agreement may be "nominally mutual, yet have the impermissible effect of being so one-sided and harsh that it is substantively unconscionable." *Brookdale Senior Living Cmtys., Inc. v. Hardy*, No. C15-96MJP, 2015 WL 13446704, at *4 (W.D. Wash. June 5, 2015) (court order); *see also Zuver*, 153 Wn.2d at 317 n.16. In *Brookdale*, an assisted living facility's arbitration agreement encompassed " '[a]ny any all claims or controversies . . . excluding any action for eviction.' " 2015 WL 13446704, at *1, *4.[4] The district court determined that the agreement was unconscionable, recognizing that "only [the assisted living facility], in its capacity as landlord, would file an eviction action, while any cause of action belonging to [the plaintiff] would be subject to mandatory arbitration." *Id.* at *4. In part because of the subject-matter exclusion, the court held that the arbitration agreement was "consistently tilted in favor of the assisted living facility and against residents," so it was unenforceable. *Id.* at *6.

---

[4] Alterations in original.

7

Here, the Arbitration Agreement provides that

[a]ny and all claims and disputes between [Beverly] and [Aegis Living] arising from or related to the Residence and Care agreement entered into by the parties on January 14th, 2020 or to your residency, care or services at [Aegis Living], including, without limitation claims and disputes regarding personal injury, neglect, statutory or regulatory violations, and wrongful death, shall be arbitrated.

But it excludes some claims from arbitration, stating that

any dispute involving unlawful detainer proceedings (eviction) or other disputes arising under the Washington Landlord Tenant Law (Title 59 RCW), discharge or transfer from [Aegis Living], claims for injunctive or equitable relief, actions for the appointment of a guardian ad litem, or any claims that can be brought in small claims court shall not be subject to arbitration unless both parties agree to arbitrate such proceedings.

Under these provisions, the claims that the parties must arbitrate are only claims that Christie would bring against Aegis Living, like personal injury, neglect, and wrongful death; not those that Aegis Living would bring against Christie. Indeed, Aegis Living concedes that the excluded claims for involuntary transfer, discharge, or eviction "are actions that only Aegis [Living] would pursue against its residents, and not vice versa."[5]  So, like the arbitration agreement in *Brookdale*, the subject-matter exclusions here are tilted in favor of Aegis Living, providing Aegis Living access to the courts while forcing Christie to arbitrate her claims.

For these reasons, the exclusions are one-sided and substantively unconscionable.

---

[5] At oral argument, counsel for Aegis Living struggled to identify any potential claims that it might bring that would be subject to arbitration under the Arbitration Agreement.

B. Discovery Limitations

Aegis Living argues the trial court erred by finding the Arbitration Agreement's discovery limitations under the FAA substantively unconscionable. We disagree.

The Arbitration Agreement has no specific rules governing the discovery process. Nor does it incorporate the American Arbitration Association Rules or any other rules outlining a process for prehearing discovery. Instead, the agreement provides only that "[c]laims and disputes shall be resolved by submission to neutral, binding arbitration in accordance with the [FAA]." And it states that the FAA "controls with respect to interpretation or enforcement of this Agreement."

Section 7 of the FAA is "the only FAA provision to address discovery." *Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 214 (2d Cir. 2008). 9 U.S.C. section 7 states, in relevant part, that

> arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case.

In *CVS Health Corp. v. Vividus, LLC*, the Ninth Circuit analyzed section 7 and considered whether "the FAA allows an arbitrator to order a third party to produce documents as part of pre-hearing discovery." 878 F.3d 703, 706 (9th Cir. 2017). It held that the FAA does not allow for such discovery, as "any document productions ordered against third parties can happen only 'before' the arbitrator." *Id.* at 706, 708. While the holding is specific to third parties, the

9

court's analysis examined the plain language of section 7 generally. *Id.* at 706. It determined that a "plain reading of the text of section 7 reveals that an arbitrator's power to compel the production of documents is limited to production at an arbitration hearing." *Id.*

Under the Ninth Circuit's interpretation of section 7, the FAA prohibits Christie from conducting any prehearing discovery. And the Arbitration Agreement is otherwise silent about what rules, if any, govern the exchange of information. With no opportunity to conduct discovery, Christie cannot develop her legal claims. Only Aegis Living would have access to its employees and documents, while Christie would have far greater difficulty uncovering sufficient facts to prepare for arbitration. As a result, the Arbitration Agreement's discovery limitations unreasonably favor Aegis Living.

Still, Aegis Living contends that discovery limitations "are expected in an arbitration agreement, as it serves as one of the primary justifications for the lower cost of arbitration." But a party to an arbitration proceeding must have at least "a fair opportunity to present its claims." *Hoffman v. Cargill, Inc.*, 968 F. Supp. 465, 475 (N.D. Iowa 1997). As a result, an enforceable arbitration agreement must provide for " 'more than minimal discovery.' " *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 546 (E.D. Pa. 2006) (quoting *Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 103 (D.D.C. 2004)). The Arbitration Agreement here does not, so the discovery limitations are substantively unconscionable.

C. Confidentiality Provision

Aegis Living also argues that the trial court erred by finding the confidentiality provision substantively unconscionable. Again, we disagree.

Confidentiality provisions can be unconscionable when they provide an unfair advantage to one party over the other. For example, in *Zuver*, our Supreme Court concluded that a confidentiality provision in an employment contract was substantively unconscionable because it benefited only the employer. 153 Wn.2d at 315. The court found that the provision hampered the employee's ability to prove a pattern of wrongdoing or benefit from findings in past arbitrations. *Id.* Similarly, in *McKee v. AT & T Corp.*, our Supreme Court determined that a confidentiality provision in a consumer services agreement was substantively unconscionable because it "hamper[ed] plaintiffs in learning about potentially meritorious claims and serve[d] no purpose other than to tilt the scales in favor of" one party. 164 Wn.2d 372, 380, 398-99, 191 P.3d 845 (2008). The court explained that confidentiality "unreasonably favors repeat players." *Id.* at 398. Conversely, in *Romney v. Franciscan Medical Group*, we upheld a confidentiality provision as conscionable "because it provides for a release of confidentiality when the parties otherwise agree." 186 Wn. App. 728, 744, 349 P.3d 32 (2015).

Here, the Arbitration Agreement provides, "Except as necessary in judicial review of arbitration proceedings, all matters relating to arbitration shall be confidential, including the existence and subject of the arbitration." This provision is like those in *Zuver* and *Mckee* because it is one-sided. It is a strict

11

confidentiality provision favoring a possible repeat player—Aegis Living. The provision hampers Christie from learning about potentially meritorious claims or proving a pattern of wrongdoing and tilts the scales in favor of Aegis Living. As a result, the confidentiality provision is substantively unconscionable.

2. Severability

Aegis Living argues that even if these provisions are unconscionable, the appropriate remedy is to sever them and enforce the rest of the Arbitration Agreement. We disagree.

Courts "are generally loathe to upset the terms of an agreement and strive to give effect to the intent of the parties." *Zuver*, 153 Wn.2d at 320. So, "when parties have agreed to a severability clause in an arbitration agreement, courts often strike the offending unconscionable provisions to preserve the contract's essential term of arbitration." *Id.* But if "unconscionable provisions pervade an arbitration agreement, the entire agreement should be invalidated." *Burnett*, 196 Wn.2d at 60.

Here, the subject-matter exclusions, discovery limitations, and confidentiality provision are substantively unconscionable and pervade the Arbitration Agreement. So, we cannot sever them, and the Arbitration Agreement is unenforceable.[6]

---

[6] Because we conclude that the Arbitration Agreement is substantively unconscionable and unenforceable, we need not address whether it is also procedurally unconscionable. We also need not address Christie's argument that the trial court erred by not finding the Arbitration Agreement's costs provision substantively unconscionable.

We affirm the trial court's order denying Aegis Living's motion to compel arbitration.

_____, ACJ

WE CONCUR:

_____          _____